Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 CR 137 - 1 | **DATE** | 10/27/2003 |
| **CASE TITLE** | USA vs. RONALD MIKOS | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]     The Court denies defendant's motions to suppress items seized from the storage locker [doc. no. 64-1], Items seized from automobile [doc. no. 65-1], evidence of oral communications intercepted pursuant to 18 U.S.C. Section 2510, et seq. (Title III) [doc. no. 66-1]. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| ✓ | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | OCT 2 9 2003 | | 114 |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| CG | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| RONALD MIKOS, | ) | 02 CR 137-1 |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Defendant is charged with various offenses related to Medicare fraud, including the murder of a federal witness. Before the Court are the following motions filed by defendant: (1) Motion to Suppress Items Seized From Storage Locker, (2) Motion to Suppress Items Seized From Automobile, and (3) Motion to Suppress Evidence of Oral Communications Intercepted Pursuant to 18 U.S.C. § 2510 *et seq.* (Title III). Defendant argues that evidence related to all three motions should be suppressed, or in the alternative, that an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), is required. For the reasons provided in this Memorandum Opinion and Order, defendant's motions are denied.

DOCKETED
OCT 2 9 2003

## I. Background

Defendant Ronald Mikos was indicted by a federal grand jury on June 6, 2002 with the following counts: (a) fourteen counts of mail fraud concerning Medicare payments, (b) four counts of health care fraud, (c) one count of obstructing grand jury

proceedings (d) three counts of corruptly influencing grand jury witnesses, and (e) one count of killing a grand jury witness. (Def.'s Mot. Suppress Storage Locker, at 2.) Defendant, a licensed podiatrist, had been under investigation for health care fraud. (Gov't's Resp., at 3.) The investigation concerned allegations that defendant had billed Medicare regarding various patients for treatments not performed. (*Id.*) One such patient was Joyce Brannon. (*Id.* at 4.) On January 9, 2002, Ms. Brannon received a subpoena requiring her to testify in front of the grand jury on January 31, 2002 concerning her knowledge about defendant's activities. (Storage Locker Aff. ¶ 25.) Ms. Brannon was found dead in her Chicago apartment on January 27, 2002. (Gov't's Resp., at 4.) She had been shot six times by a .22 caliber weapon. (*Id.*) Defendant was arrested without incident pursuant to an arrest warrant authorized by Magistrate Judge Ashman on February 5, 2002 outside of a drug store in Chicago. (Def.'s Mot. Suppress Automobile ¶ 1.) His car, a red 1994 Pontiac Sunbird convertible, was seized incident to his arrest. (*Id.* ¶ 2.)

Defendant's Motions to Suppress concern the following three events: (1) the interception of communications made from defendant's cellular phone, (2) the search of defendant's storage locker and subsequent seizure of evidence, and (3) the search of defendant's red 1994 Pontiac Sunbird convertible and subsequent seizures of evidence.


### A. Oral Communications

On February 1, 2002, F.B.I. Special Agent Marybeth King filed an affidavit seeking to intercept oral communications to and from the cellular phone belonging to

defendant. (Title III Aff. ¶ 4.) Judge Gettleman entered an order on the same day authorizing the interception. (Gov't's Resp., at 1.) Pursuant to that order, law enforcement intercepted telephone conversations made to and from defendant's cellular phone until defendant was arrested on February 5, 2002. (*Id.*)

## B. Storage Locker

On February 4, 2002, FBI Special Agent Marybeth King filed an affidavit supporting, and was granted, a "sneak and peek" warrant under 18 U.S.C § 3103a. The warrant authorized law enforcement to search the storage locker rented by defendant at Acorn Self Storage in Chicago, Illinois for various pieces of evidence.

The warrant was executed on February 5, 2002 at approximately 9:43 a.m. (Def.'s Mot. Suppress Storage Locker ¶ 2.) During the execution of the warrant, several firearms were found. (*Id.*) The ATF was notified, and the firearms were tested for operability and photographed outside of the storage locker. (*Id.*) At 2:05 that afternoon, a conventional warrant was issued by Magistrate Judge Ashman for the seizure of certain items found in the storage unit during the execution of the sneak and peek warrant. This warrant also was executed. (*Id.* ¶ 3.) Several items were seized pursuant to this warrant. (*Id.*) On March 4, 2002, Magistrate Judge Edward Bobrick issued a third search warrant authorizing the seizure of yet more items from the locker. (*Id.* ¶ 4.) This warrant was executed on March 8, 2002. (*Id.*) Finally, on February 6, 2002 Magistrate Judge Ashman signed a warrant authorizing the arrest of defendant and the search of his automobile.

## C. Defendant's 1994 Pontiac Sunbird Convertible

Defendant's Pontiac was seized incident to his arrest on the afternoon of February 6, 2002. (*Government's Consolidated Response Pg.2*)[1] On February 6, 2002, Magistrate Judge Ashman issued a warrant authorizing the seizure of six listed items: (1) a .22 caliber revolver; (2) ammunition for a .22 caliber revolver; (3) holsters or containers for holding any firearms or ammunition; (4) items containing the name, address, and phone number of Joyce Brannon; (5) items evidencing ownership of the subject vehicle; and (6) forensic evidence connecting Ronald Mikos to Brannon's murder. (Def.'s Mot. Suppress Automobile ¶ 3.) The warrant was executed later that day, and sixteen items were seized. (Def.'s Mot. Suppress Automobile ¶ 4.) On February 8, 2002, a secondary search of the car was done and a laptop computer and digital camera were recovered. (*Id.* ¶ 5.) A separate warrant was issued to search the laptop and digital camera. (*Id.*) Subsequent searches were done on February 15 and 25, resulting in the seizure of floor samples and fabric from the car as well as fourteen additional items. (*Id.* ¶¶ 6, 7.) On March 21, 2002, the Pontiac was returned to defendant's attorney. (*Id.* ¶ 8.)

---

[1] Defendant's *Motion to Suppress Items Seized from Automobile* alleges that the defendant was arrested on the afternoon of February 5, 2002 and his automobile towed to a garage at that time.(¶ 1 and 2) Further, that the search warrant for the automobile issued on Feb. 6, 2002 and was executed on that same date.(¶ 3 and 4) The difference in the alleged arrested date given in the Government's Consolidated Response and that expressed in Defendant's *Motion to Suppress Items Seized from Automobile* is not crucial for our purposes as both submissions agree that the automobile was searched pursuant to a warrant issued on Feb. 6, 2002 and executed thereafter.

## II. *Franks* Hearing

The Fourth Amendment to the United States Constitution requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. A search warrant may only be issued if it appears from the supporting affidavit that there is probable cause to believe that the defendant has committed an offense. *See id.*; FED. R. CRIM. P. 4(a). An affidavit supporting a warrant has made a proper showing of probable cause if it "sets forth facts sufficient to induce a reasonably prudent person to believe that a search . . . will uncover evidence of a crime." *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990), *overruled on other grounds by United States v. Nance*, 236 F.3d 820 (7th Cir. 2000). When deciding whether an affidavit supports a finding of probable cause, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [said magistrate], . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). The decision made by the magistrate is given great deference. *Id.*

As mentioned previously, defendant seeks to suppress the evidence seized in the above searches, or alternatively, requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). Under *Franks*, a defendant may be entitled to an evidentiary hearing to challenge the veracity of an affidavit submitted in support of a search warrant. *Id.* Affidavits supporting search warrants, however, enjoy a presumption of validity. *Id.* at 171. The defendant will be entitled to a hearing if he or she makes "a

5

substantial preliminary showing" that (1) a false, misleading, or omitted statement was included in the affidavit supporting the warrant (2) that the affiant made the false statement intentionally or with reckless disregard for the truth and (3) that the false, misleading or omitted information was necessary for the magistrate's finding of probable cause. *Id.* at 155-56; *United States v. Maro*, 272 F.3d 817 (7th Cir. 2001).

The Court of Appeals for the Seventh Circuit has noted that the three elements necessary to entitle a defendant to a *Franks* hearing "are hard to prove, and thus *Franks* hearings are rarely held." *Maro*, 272 F.3d at 821 (quoting *United States v. Swanson*, 210 F.3d 788, 790 (7th Cir. 2000)). A defendant seeking a *Franks* hearing "bears a substantial burden to demonstrate probable falsity." *Id.*; *see also McNeese*, 901 F.2d at 594; *United States v. A Residence Located at 218 Third Street*, 805 F.2d 256, 258 (7th Cir. 1986). The defendant "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *McNeese*, 901 F.2d at 594. The Court of Appeals for the Seventh Circuit has even gone as far as to say that a showing of "egregious errors" is necessary for a *Franks* hearing. *Maro*, 272 F.3d 817 at 822. Using these rules as a guide, each of defendant's motions to suppress will be discussed in turn.

### III. Defendant's Motions to Suppress

Defendant has moved to suppress: (1) evidence recovered from the Title III wiretap, (2) evidence recovered from defendant's storage locker and (3) evidence recovered from defendant's Pontiac Sunbird Convertible. In the Motions to Suppress, defendant challenges the following three categories of information with varying

6

emphasis: (a) the description of the car witnessed outside of Joyce Brannon's apartment on the day of her death, (b) the statements related to defendant's application for a Firearms Owners Identification Card (FOID card) to possess weapons and (c) the statements related to defendant's 1989 possession of numerous firearms and a subsequent ATF investigation.

### A. Evidence Recovered as a Result of the Title III Wire Tap

The affidavit in support of the application for a wiretap was based on probable cause to believe that defendant had committed, was committing, and would continue to commit the following federal crimes: (1) influencing or injuring witnesses in an ongoing federal grand jury investigation; and (2) mail fraud. (Title III Aff. ¶ 4.) Defendant challenges the interceptions of oral communications on two bases. First, he argues that the interceptions violated his constitutional rights under the Fourth Amendment. (Def.'s Mot. Suppress Title III, at 4-5.) Second, he argues that the interceptions violated various statutory provisions of The Wire and Electronic Communications Interception and Interception of Oral Communications Act, 18 U.S.C. § 2510 *et seq.* (*Id.*) These arguments will be addressed in turn. ****

In his Frank's motion Defendant challenges the following three categories of information: (1) the description of the car witnessed outside of Joyce Brannon's apartment on the day of her death, (2) the statements related to defendant's application for a Firearms Owners Identification Card (FOID card) to possess weapons and (3) the statements related to defendant's 1989 possession of numerous firearms and a subsequent ATF investigation. Defendant also argues that much of the information contained in the

affidavit is stale. (Def.'s Mot. Suppress. Title III, at 10.)

## 1. False or Misleading Evidence

### a. The Description of the Pontiac

Paragraph nine of FBI Agent Marybeth King's affidavit in support of the Interception Order states "a red car had been seen in the area [of Joyce Brannon's apartment] at or about the time of the shooting. Mikos owns a red car." (Title III Aff. ¶ 9.) Paragraph thirty-two of the same affidavit states "[a] subsequent canvas of the area revealed a witness who saw a red Pontiac car in the area around the time of the murder. According to Department of Motor Vehicle records, Mikos had a red 1994 Pontiac Sunbird convertible registered to his name." (*Id.* ¶ 32.)

Defendant argues that the above statements are false and misleading because the witnesses describe "an all red car" whereas defendant's car is a "red Pontiac Sunbird convertible with a white canvas roof." (Def.'s Mot. Suppress Title III, at 8.) Defendant asserts that his car is thus a red and white car, and not an all red car, concluding that the description of the car in the affidavit is false and misleading. (*Id.*) Defendant further asserts that the information concerning the description of defendant's car was necessary to the finding of probable cause. (*Id.*)

### b. The FOID Card

Paragraph nine of the affidavit in support of the Interception Order also states that "Ronald Mikos had obtained a Firearms Owners Identification Card on January 10,

8

2002." (Title III Aff. ¶ 9.) Paragraph twenty-four states, in addition to defendant's being

issued a FOID card, that "Although there is no record of Mikos purchasing any weapons,

I have been informed that a [FOID card] is required to purchase ammunition. I have also

been informed that stores are not required to report purchases or ammunition." (*Id.* at ¶

24.) Defendant argues that this information is false and misleading because he *renewed*

his already existing FOID card instead of outright *applying* for one. (Def.'s Mot.

Suppress Title III at 9.)


### c. Defendant's 1989 Possession of Firearms

Paragraph twelve of the affidavit supporting the Interception Order states "[i]n

late 1988, Mikos' estranged wife and her attorney provided information to Alcohol

Tobacco and Firearms (ATF) agents that Mikos illegally possessed numerous firearms

including possibly a converted UZI machine gun and other destructive devices." (Title

III Aff. ¶ 12.) Paragraph thirteen states that in 1989 the Chicago Police Department, in

executing a search warrant, found various weapons in defendant's apartment and car.

(*Id.* ¶ 13.) Defendant argues that this information is false and misleading because first,

the judge was not told about the possible violations such possession would involve and

second, because "[t]he purpose and effect of the two paragraphs was to give the judge the

impression of Dr. Mikos [sic] committing serious violations of weapons laws, whereas

that was far from the true situation." (Def.'s Mot. Suppress Title III, at 10.)


### d. Staleness

9

Defendant further argues that information contained in the affidavit is stale, and thus it is insufficient to establish probable cause to issue an Interception Order. (Def.'s Mot. Suppress Title III, at 10.) As noted by defendant, "the age of the information supporting the application for a warrant is a factor that a magistrate should consider." *United State v. Batchelder*, 824 F.2d 563, 564 (7th Cir. 1987). Defendant argues that the information in the affidavit relating to (1) his 1989 possession of weapons; (2) an incident in college involving a "gunpowder-fueled type of bomb"; (3) Mikos' treatment for drug abuse in 1986 and 1987, and (4) Mikos' 1995 prescription drug problem is "largely stale." (Def.'s Mot. Suppress Title III, at 11.) For the reasons discussed below, because the Court finds that probable cause existed in the affidavit to issue the Title III wiretap without reference to this complained of information, the Court need not decide this issue.

### 2. Constitutional Challenge

Defendant argues that because the affidavit supporting the government's Application for the Interception Order contains the above false, misleading, and omitted information, and because that information was material to Judge Gettleman's finding of probable cause, the application was in fact not supported by probable cause in violation of defendant's Fourth Amendment rights. (Def.'s Mot. Suppress Title III, at 11.) Defendant requests that the evidence retrieved pursuant to the Interception Order be suppressed, or that a *Franks* hearing be held. (*Id.* at 11-12.)

#### a. Materiality

As to the third prong of the *Franks*, the Government asserts that even without the

10

information disputed above, there was a sufficient basis within the affidavit to establish probable cause. This Court agrees.

The Interception Order was authorized to obtain evidence of witness tampering and obstruction of a federal grand jury investigation. (Joint Appx. Ex.. 3.) The information above disputed by defendant relates almost solely to defendant's alleged involvement with Ms. Brannon's murder. As noted by the Government, there is substantial information in the affidavit besides that contested by defendant to establish probable cause to issue the Interception Order. The Order was supported with an affidavit consisting of 22 pages. Rather than discussing every detail of the affidavit, this Court makes the following observations.

First, the affidavit contains information that in August 2000 a federal grand jury was convened to investigate allegations that defendant billed Medicare for services he did not perform. (Title III Aff. ¶ 16.) These services were allegedly performed on Joyce Brannon and at least six other patients. (*Id.* ¶ 17.) Second, the affidavit states that Mikos had knowledge of this federal jury investigation. (*Id.* ¶ 20.) Mikos' knowledge of the investigation is based on the fact that defendant's attorney was served with grand jury subpoenas seeking patient records, including those of Joyce Brannon and Charles Lobosco. (*Id.*)

Third, the affidavit contains information that defendant made contact with several patients subpoenaed to testify in front of the federal grand jury investigating him. (*Id.* ¶¶ 25-26, 33, 35-38.) One such patient was Joyce Brannon. (*Id.* ¶ 26.) The affidavit noted that when FBI agents interviewed Ms. Brannon on September 26, 2001 about defendant's activities, Ms. Brannon stated that defendant had contacted her the

night before and "asked if any people from Medicare had been there to see her." (Title III Aff. ¶ 17(a).) The affidavit indicated that Mikos did not ask Ms. Brannon to do or say anything but that Ms. Brannon told Mikos that she would not lie for him. (*Id.*) The affidavit further indicates that Mikos contacted Ms. Brannon again on January 24, 2002, seven days before Ms. Brannon was to testify in front of the grand jury and three days before her death. (*Id.* ¶ 26.) Telephone records indicate that defendant called Ms. Brannon at her home just past 8:00 p.m. on January 24, 2002. (*Id.*) The call lasted approximately three minutes and forty-three seconds. (*Id.*) The affidavit further states that after receiving the phone call from defendant, Ms. Brannon called her sister, who lives in Texas. (*Id.*) The affidavit explains that Ms. Brannon's sister indicated that Ms. Brannon left a message on her answering machine indicating defendant had contacted her. (*Id.* ¶ 27.) The affidavit also indicates that when Ms. Brannon's sister returned the phone call that evening, Ms. Brannon told her (1) the doctor wanted to give her a new number; (2) the doctor wanted to talk to her about her up coming testimony; (3) the doctor told her that if she testified he would lose his medical license and it would ruin his family and medical practice, (4) the doctor told her she could just say she did not remember. (*Id.*)

The affidavit also indicates that defendant had contact with several other patients. For example, Patient A had been served with a federal grand jury subpoena on or about January 15, 2002. (*Id.* ¶ 33.) Patient A was scheduled to testify on January 31, 2002. (*Id.*) Phone records indicate that on January 18, 2002, defendant's cellular phone called a telephone subscribed to Patient A. (*Id.*) This call lasted for approximately four minutes

and fifty-one seconds. (*Id.*) However, when law enforcement contacted Patient A on January 28, 2002, Patient A said she last had contact with defendant in November. (*Id.* ¶ 34.) The affidavit indicates that Patient A "appeared evasive" during the meeting. (*Id.*)

The affidavit indicates that phone contact was also made from defendant to Patient C on at least nine occasions between January 7, 2002 and January 28, 2002 (*id.* ¶ 35); that phone contact was made between defendant and Patient D on January 26, 2002 (*id.* ¶ 36); that phone contact was made between defendant and his patient, Charles Lobosco, at least thirty-three times between January 1, 2002 and January 28, 2002 (*id.* ¶ 38).

Based on the above information contained in the affidavit, this Court finds that the information complained of in the affidavit relating to the description of the car was not material to the magistrate judge's finding of probable cause for the wiretap. Further, the alleged omission's and misrepresentation relating to the FOID card renewal and the 1989 weapons seizure was not material to the finding of probable cause for the wiretap. Because defendant fails to make out this prong of the *Franks* test, defendant's motion to suppress evidence intercepted by wiretap and defendant's request for a *Franks* hearing on this evidence is denied.

### b. Intent

However, even assuming that the statements contained in the affidavit of which defendant complains were necessary for the magistrate's finding of probable cause, defendant still fails to establish the second prong of the *Franks* test, namely that the affiant made the false statements or omissions intentionally, or with reckless disregard

for the truth. This contention is explored in detail in subsection B, *infra*, and the same analysis applies.

### 3. Statutory Challenge

Defendant argues that in addition to violating his rights under the Fourth Amendment, the order authorizing the wiretap violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522. 18 U.S.C. § 2518(10)(a) provides: "Any aggrieved person in any trial…before any court…may move to suppress the contents of any … oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that . . . the communication was unlawfully intercepted . . . ." Defendant correctly points out that the Supreme Court has interpreted "unlawfully intercepted" as not limited only to constitutional violations, but also the "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of the intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." (Def.'s Mot. Suppress Title III, at 5) (quoting *United States v. Giordano*, 416 U.S. 505, 527 (1974).)

However, defendant's argument for suppression of the evidence received from the wiretap attacks only the magistrate judge's finding of probable cause. (*See* Def.'s Mot. Suppress Title III, at 8). It has already been held in this jurisdiction that "[t]he standard for probable cause under Title III is identical to that under the Fourth Amendment." *United States v. Mares-Martinez*, 240 F. Supp. 2d 803, 814 (N.D. Ill. 2002). Thus, because this Court has found that probable cause existed as required by the Fourth

14

Amendment to issue the wiretap, the same analysis applies to defendant's statutory argument.

## B. Evidence Recovered from the Storage Locker

The government applied for, and was issued, a "sneak and peek" warrant pursuant to 18 U.S.C. § 3103a to search defendant's storage locker located #102 located at Acorn Self Storage in Chicago, Illinois. This "sneak and peek" warrant was issued on the belief that probable cause existed to search Mikos' storage unit at Acorn Self Storage. (Storage Locker Aff. ¶ 3.) Defendant argues first that the affidavit supporting the "sneak and peek" warrant application and subsequent warrant applications contained materially false, misleading, or omitted information and second, that the affidavits lacked probable cause to issue the two search warrants of which defendant complains. (Def.'s Mot. Suppress Storage Locker ¶ 5.) Third, defendant argues that the government seized evidence from defendant's storage locker in violation of the "sneak and peek" warrant. (*Id.* ¶ 6.) Defendant asks that the evidence seized from the storage locker be suppressed, or alternatively, that a *Franks* hearing be held. (*Id.*)

Neither party has cited, nor has this Court found in its own independent research, any precedent within the Seventh Circuit regarding "sneak and peek" warrants. Sneak and peek warrants are used when it is "advantageous to enter, look around, photograph items and leave without seizing anything and without leaving a copy of the warrant." KEVIN CORR, *Sneaky but Lawful: The Use of Sneak and Peek Search Warrants*, 43 Kan. L. Rev. 1103, 1103 (1995). This author further explains:

Sneak and peek search warrants enable officers to maintain an investigation's

15

> secrecy while allowing non-consensual, court-authorized entry and search. Secrecy is maintained, at least for a few days after the search, because no notice of the entry and search is left at the scene . . . . [and] nothing is usually seized that would alert the occupant that a search took place. With a locksmith-assisted entry and a carefully conducted search that does not disturb the premises, the occupant may not realize that law enforcement entered until it is too late to curtail the heretofore hidden criminal activity.

*Id.*

## 1. False, Misleading and Omitted Information

Defendant argues that information similar to that contained in the affidavit supporting the wiretap order was also included in the affidavit supporting the issuance of the warrant to search his storage locker. Because in large part these statements have already been discussed above, the Court's discussion will be abbreviated.

### a. The Description of the Pontiac

Defendant argues that the affidavit contained false and misleading information about defendant's car. This information is substantially similar to that contained in the affidavit supporting the wire tap authorization, namely, that the affidavit states witnesses saw a red car in the area of the Joyce Brannon's home around the time of the murder, that defendant owns a red 1994 red Pontiac and that "as recently as February 4, 2002, law enforcement has observed Mikos driving the red 1994 Pontiac." (Storage Locker Aff. ¶¶ 6, 34.) Defendant argues that this information is false and misleading because defendant's car is, in fact, red and white. (Def.'s Mot. Suppress Storage Locker ¶ 9.)

Defendant also argues that a witness interviewed by the Chicago Police Department stated that he saw "an all red Pontiac Grand Am or Trans Am parked in the

church driveway . . . . The interior dome light was on and the engine was running." (*Id.* ¶
10.) Furthermore, another witness, the individual who first found Joyce Brannon's
body, told the Chicago Police that at the same time he came across Joyce Brannon's
body, his daughter's car, a red 1991 Pontiac Grand Am was parked in front of the church
to pick up her parents. (*Id.*) Defendant argues that the affidavit is false and misleading
because at the time the government sought the warrant, the government knew that
defendant's car did not match the descriptions provided by the two witnesses and did not
include this information in the affidavit. (*Id.*)

The Government, on the other hand, asserts that the information contained in the
affidavit regarding the description of the car is not false or misleading. The Government
concedes that the information regarding the possibility of another Pontiac being
described to the police should have been included in the affidavit had the affiant, Agent
King, been aware of it at the time the affidavit was sworn to. (Gov't's Resp., at 12.) The
Government also argues that the remaining information in the affidavit supported the
magistrate judge's finding of probable cause. (*Id.*, at 13.)

### b. The FOID Card

Defendant next argues that information regarding the January 10 issuance of a
new FOID card to defendant included in the affidavit was false and misleading because
the affidavit does not state that defendant was *renewing* his previously expired FOID
card. (Def.'s Mot. Suppress Storage Locker ¶ 11.) Defendant argues that this
information was false or misleading because "the government sought to convey to the

magistrate that Dr. Mikos newly acquired a FOID card to purchase .22 caliber ammunition and possibly firearms." (*Id.* ¶ 13.) Defendant argues that the affidavit omitted the fact that (1) on January 6, 2002 the Skokie Police seized weapons from him because his FOID card had expired and (2) that law enforcement was aware that he applied for a new card on January 7, 2002 and received a new card on January 10, 2002. (*Id.* ¶ 12.)

The Government counters that including the fact that defendant was renewing his expired FOID card in no way makes it less likely that defendant renewed the FOID card to gain access to weapons. (Gov't's Resp., at 14.) Specifically, the Government argues that had the affiant included the information about the January 6, 2002 weapons seizure and defendant's receipt of a new FOID card on January 10, 2002, the implication that defendant was applying for a FOID card to receive weapons (*i.e.*, reclaim the weapons seized by the Skokie Police) is made even more likely, not less likely. (*Id.*)

### c. The 1989 Weapons Seizure

Defendant attacks the inclusion in the affidavit supporting the sneak and peek warrant to search his storage locker of information of events that occurred in 1989. Paragraph 13 of the affidavit states "in late 1988, Mikos' estranged wife and her attorney provided information to [ATF] agents that Mikos' illegally possessed numerous firearms including possibly a converted UZI machine gun and other destructive devices." (Def.'s Mot. Suppress Storage Locker ¶ 14.) Paragraph 14 of the affidavit states that "officers recovered twelve guns, including an UZI, as well as a box containing live ammunition." (*Id.*) The affidavit also notes that "Mikos was ultimately not charged with any criminal

18

offense as a result of his possession of these weapons because there were legal concerns about the consent given for the search of Mikos' automobile and office." (*Id.*)

Defendant argues that the affidavit should have stated that "the only clear violation of law" with which defendant may have been charged was a violation of a Chicago City Ordinance. *Id.* Defendant further argues that the "purpose and effect of the two paragraphs was to give the magistrate the impression of Dr. Mikos committing serious violations of weapons laws, whereas that was far from the true situation." *Id.*

The Government counters that even if it is true that the only violation defendant may have been charged with was a City of Chicago Ordinance violation, the affidavit's failure to inform the magistrate judge of this information does not affect the magistrate judge's finding of probable cause. (Gov't's Resp., at 15.) The Government also denies that the only possible violation the defendant may have committed was a City of Chicago Ordinance and proceeds to explain various federal laws defendant may have violated by possessing the firearms (including 26 U.S.C. § 5861(d); 18 U.S.C. § 922(a)(6)). (*Id.* at 15-16.)

### d. Staleness

Defendant again asserts that information contained in the affidavit was stale. (Def.'s Mot. Suppress Storage Locker ¶ 15.) Defendant relies on the same facts to support his argument that were referenced in his Motion to Suppress Evidence of Oral Communications Intercepted Pursuant to 18 U.S.C. § 2510, *et seq.* As this Court reaches the same result for the same reasons addressed in the analysis of the Motion to Suppress

Evidence of Oral Communications, this argument will not be addressed here.

## 2. Analysis

Assuming, *arguendo*, that the above statements about the red car, FOID card and weapons possession are "false, misleading and omitted," defendant again makes no showing of either the second or third prongs of the *Franks* test. Defendant makes no showing either that (1) the affiant (Agent King) made the false statement "knowingly or intentionally" or with reckless regard for the truth or (2) the disputed information was material to the magistrate's finding of probable cause.

### a. Intent

Defendant fails to make a substantial preliminary showing of the second prong of the *Franks* test, namely that the affiant made the false or misleading statements intentionally, or with reckless disregard for the truth. *See United States v. Swanson*, 210 F.3d 788, 791 (7th Cir. 2000). Defendant's argument that material information was omitted from the affidavit similarly fails. "The Seventh Circuit tests an affidavit's allegedly omitted statements under the same standard that the *Franks* Court has established for false statements." *McNeese*, 901 F.2d at 594. "Mere negligence by the affiant does not constitute reckless disregard for the truth." *Id.*

Defendant makes the following assertions regarding the knowledge prong of the *Franks* test. First, as to the description of the Pontiac, defendant argues that law enforcement knew as early as January 31, 2002 that defendant's car was a red and white convertible. (Def.'s Mot. Suppress Storage Locker at ¶ 9.) This information, however,

20

was not included in the affidavit supporting the sneak and peek warrant. *Id.* Defendant argues that because law enforcement knew that defendant's car was a red and white convertible, the affiant, FBI Agent King, knew that the descriptions given by witnesses regarding an "all red Pontiac Grand Am or Trans Am" with an interior dome light on seen at the scene, did not match the description of Mikos' car. *Id.* at ¶ 10. However, the Government points out that defendant has made no showing that Agent King was aware of, or recklessly disregarded, the statements given by witnesses to the Chicago Police Officers. (Resp. Mot. Def. Suppress at 30.) Significantly, the Government notes that the Chicago Police Department report was not even filed until March 2, 2002, almost a month after the sneak and peek warrant was issued. In order to grant the defendant's request we would have to infer from the existence of this CPD report, filed in March, that FBI Agent King, in February, knew the extra information contained in the March report and intentionally excluded it, or that she was reckless in failing to know or in failing to include it. Yet it appears to us that the omission of this information from the warrant affidavit was, at most, possibly negligent - in that it can be argued that Agent King ought to have discovered this information even before the Chicago Police Department report was filed. But no specific articulation has been made as to how Agent King could have done this or even if it could have been done. Further, as noted above, negligence alone is not enough to constitute reckless disregard for the truth and there has been no showing of any conduct amounting to reckless disregard for the truth by Agent King. Had the CPD report been issued prior to the affidavit, then a *Frank's* type hearing might be necessary to establish why the agent should not be held to have been reckless, at least, in failing to include all of the pertinent information regarding the car in her affidavit. But without

21

such a report an inference that the agent knew, or would have known absent reckless disregard for the truth, is no more than speculation.

With regard to the FOID card application, defendant asserts that the affiant knew that Mikos renewed his previously expired FOID card on January 10, 2002. This is because the criminal complaint filed against defendant on February 6, 2002 contained information (1) that the Skokie Police seized Mikos' weapons because his FOID card had expired and (2) that law enforcement recovered information indicating that Mikos mailed a package to the Illinois State Police FOID Section on January 7, 2002 and received a new FOID card on January 10, 2002. However, defendant again makes no substantial showing that, even if the affiant were to have known this information, the affiant omitted the information intentionally, or with reckless disregard for the truth. Further, a full disclosure of all of these facts in the affidavit would, in our opinion, only have helped the government's submission. It would have further established the defendant's easy access to and familiarity with firearms. It would also have established that the defendant's possession of these firearms was, in the opinion of the officers who seized them, unlawful. Finally this information would have established the basis for an inference, at least, that the defendant felt the need to recover his firearms quickly and just shortly before the victim's death by gunshot wounds. This set of facts and the reasonable inferences that can be drawn therefrom makes a stronger case against the defendant than does the mere statement that the defendant applied for a firearm owners identification card. The same can be said about the 1989 weapons seizure. Defendant makes no substantial preliminary showing that the affiant intentionally or recklessly omitted information about the possible crimes with which defendant may have been charged. As

22

noted above, the affidavit clearly states that Mikos was not charged with any criminal offense. This Court does not believe it is the affiant's duty to tell the magistrate judge the possible charges a defendant may have faced. Furthermore, it appears that a municipal ordinance is not the only possible charge the defendant could have faced for possession of a fully automatic weapon.

### b. Materiality

Assuming, *arguendo*, that defendant was able to make a substantial preliminary showing that the affiant made the false statements intentionally or with reckless disregard for the truth, the disputed statements were not material to the magistrate's finding of probable cause.

The affidavit supporting the warrant was 17 pages long. It contained information to support that probable cause existed to search defendant's storage unit at Acorn Self Storage. The affidavit contained the following substantial information in support of probable cause: (1) defendant was the subject of an extensive Medicare fraud investigation, including the fact that defendant allegedly billed Medicare for services he never performed on Joyce Brannon(Storage Locker Aff. ¶¶ 18, 19); (2) defendant was aware that he was being investigated by a Grand Jury (*id.* ¶¶ 22,23); (3) defendant contacted Joyce Brannon on September 25, 2001 but told investigators on October 2, 2001 that his last contact with her was in November of 1997 (*id.* ¶ 24); (4) defendant contacted various former patients who had received subpoenas to testify against him(*id.* ¶ 27); (5) defendant contacted Ms. Brannon three days before her murder on January 24, 2002 (*id.* ¶ 28); (6) Ms. Brannon relayed to her sister the content of that conversation,

including the following facts: (a) defendant wanted to give Ms. Brannon a new phone number (*id.* at ¶ 29(b)); (b) defendant wanted to talk to Ms. Brannon about her upcoming grand jury testimony (*id.*); (c) defendant's statement that if Ms. Brannon testified, defendant would lose his medical license, which would ruin his family and medical practice (*id.*); (d) defendant told Ms. Brannon she could just say she did not remember (*id.*); (e) Ms. Brannon told defendant she would do what was honest; and (f) Ms. Brannon told defendant she would not lose her nursing license for him (*id.*); (7) the Chicago Police Department learned that defendant had been to his storage locker on January 24, 2002 (*id.* ¶ 41); (8) the Chicago Police learned from Acorn Storage employees that defendant had been at his storage unit after January 27, 2002 (the date Ms. Brannon was murdered) and January 31, 2002 (*id.*); and (9) on February 4, 2002, law enforcement intercepted a phone call between defendant and Charles Lobosco that discussed a story in the paper about "the woman who was killed"[2] (*id.* ¶ 39). This information is enough "to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *McNeese*, 901 F.2d at 592. Thus, this Court finds that even without the information of which defendant complains, or including the information defendant requests, the affidavit in support of the sneak and peek warrant established probable cause.

### 3. Compliance with 18 U.S.C. § 3103a

Defendant next argues that the evidence seized from his storage locker should be

---

[2]This phone call was intercepted pursuant to the Title III wiretap that was issued on February 1, 2002 and is the subject of Part III, subsection A, *supra*.

suppressed because the government seized it in violation of 18 U.S.C. § 3103a(b)(2). 18

U.S.C. § 3103a(b)(2) provides that the government may delay any notice of the search if

"the warrant prohibits the seizure of any tangible property . . . ." As noted by defendant,

the sneak and peek warrant was issued on February 4, 2002 and executed on February 5,

2002. (Def.'s Mot. Suppress Storage Locker ¶¶ 1, 2.) The sneak and peek warrant read

"Law enforcement agents and officers are not authorized to seize any property found

during the search." (Id. ¶ 19.) A second, conventional search warrant was also issued on

February 5, 2002, allowing law enforcement to seize evidence from the storage locker.

Defendant argues that during the execution of the warrant, law enforcement officers

violated this provision by (1) taking weapons out of duffel bag found within the locker

and testing the weapons for operability (2) taking these weapons out into the street and

photographing them. (Id. ¶¶ 19, 20.) Defendant argues that this behavior constituted a

seizure in violation of the warrant; and because the firearms were "seized," they should

be suppressed. We disagree.

First, this Court finds that the removal of the weapons and the photographing of

the same outside of the storage locker does not constitute a seizure. The weapons were

not removed from the area, they were not moved for any length of time and because they

were in storage and the defendant did not have quick and easy access to them even under

ordinary circumstances, it can not be said that the movement of the weapons outside for

photographing and testing in any way altered the weapons' accessability insofar as the

defendant is concerned. We do not believe that such activities constituted a "meaningful

interference with" defendant's "possessory interests" in the weapons. *See United States*

*v. Jacobsen*, 466 U.S. 109, 113 (1984). The intent was to examine the items so as to

fully understand what the search had turned up, not to take the items into custody so as to preserve them as evidence. While the outcome might be different had the items been removed from a place where they were readily accessible to the defendant to a place where they were not, or if the movement had been for more than the briefest of time, under the particular circumstances of this case we do not believe a seizure has occurred.

Further, this Court believes that the weapons would have been discovered independently of their being (1) removed from the duffel bag and tested for operability or (2) taken into the street and photographed. Even if the complained of activity constituted a "seizure" in violation of the warrant, the evidence need not be suppressed under the independent source doctrine.

The Supreme Court has stated that the independent source doctrine applies if evidence challenged by a defendant is initially discovered unlawfully, but is subsequently obtained in a manner independent of the initial discovery. *Nix v. Williams*, 467 U.S. 431, 443 (1984). According to the Supreme Court, "[t]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *Nix*, 467 U.S. at 443. "The independent source doctrine avoids this by allowing the introduction of evidence discovered initially during an unlawful search if the evidence is discovered later through a source that is untainted by the initial illegality." *United States v. Markling*, 7 F.3d 1309, 1315 (7th Cir. 1993).

As noted by the Government, the central question when faced with the

independent source doctrine is whether the illegal evidence was obtained by independent legal means. (Gov.'s Resp., at 35.) The Seventh Circuit has derived the following two-part test to determine whether the independent source doctrine applies: first, it asks whether the illegally obtained evidence affected the magistrate judge's decision to issue the search warrant; second, it asks if the officer's decision to seek warrant was prompted by what was discovered during the illegal search. *Markling*, 7 F.3d at 1315-16.

As to the second prong, the Government asserts that the removal and photographing of the firearms did not prompt law enforcement to obtain the conventional warrant to seize the firearms. (Gov.'s Resp., at 35.) This Court agrees. The government sought a conventional warrant to seize evidence from the storage locker after the sneak and peek warrant was executed. It defies reason to believe that it was the photographing of the weapons and taking them out into the street that caused the officers to seek the conventional warrant. Once the weapons were found during the initial search the second warrant was inevitable and would have occurred whether or not the weapons were removed to the street and tested or photographed. The same can be said about the first prong, namely the magistrate judge's decision to issue the conventional warrant allowing the seizure of the weapons.

## C. Evidence Recovered from the 1994 Pontiac Sunbird Convertible

As stated previously, defendant was arrested without incident on February 5, 2002 while outside of a drug store in Skokie, Illinois. (Def.'s Mot. Suppress Automobile ¶ 1.) His 1994 red Pontiac Sunbird convertible was seized incident to his arrest. (*Id.* ¶ 2.) In the early hours of February 6, 2002, Magistrate Judge Ashman signed a search

27

warrant authorizing law enforcement to search Mikos' car as he found that the affidavit in support of the warrant asserted probable cause existed to believe that property and items constituting evidence of the commission of the crimes of influencing a witness and obstruction of justice are contained within the red Pontiac convertible. (Automobile Aff. ¶ 3(a).) The warrant authorized the seizure of six pieces of evidence. (Def.'s Mot. Suppress Automobile ¶ 3.) The warrant was executed later that day. (*Id.* ¶ 4.) Subsequent searches were executed on February 8, February 15 and February 25, 2002. (*Id.* ¶¶ 5-7.)

Defendant argues first that because the government seized evidence beyond the six items authorized in the warrant, the particularity requirement of the Fourth Amendment was violated. (*Id.* ¶¶ 11, 12.) Defendant asks that those items seized beyond those authorized in the warrant be suppressed. (*Id.* ¶ 12.) Second, defendant argues that because the affidavit supporting the warrant contained false, misleading or omitted information, all evidence seized from his 1994 Pontiac Sunbird should be suppressed, or in the alternative, a *Franks* hearing should be held. (*Id.* ¶¶ 15-17.) Because defendant's *Franks* challenge is similar to those raised in the motions discussed above, this Court will answer this contention first.

## 1. False, Misleading, or Omitted Information

Defendant again raises the contention that the affidavit supporting the warrant at issue contained false or misleading information about the description of the car seen around Ms. Brannon's home at the time of her death. As discussed above, defendant makes no showing that the affiant knew of the false, misleading, or omitted information

at the time she swore to her affidavit, or that she intentionally included the false, misleading, or omitted information. Similarly, defendant again makes no showing that the information concerning the car was material to the magistrate judge's finding of probable cause. The affidavit more than established, based on the totality of the circumstances, that there was a reasonable probability that Mikos engaged in the criminal activity described. *See United States v. Levy*, 990 F.2d 971, 973 (7th Cir. 1993). The affidavit supporting the search of defendant's car contained the same information related above in reference to the search of defendant's storage locker, plus additional information. This consisted of information that (1) a .22 caliber revolver was used to kill Ms. Brannon (Automobile Aff. ¶ 24); (2) that the Skokie Police Department released to the defendant a .22 caliber revolver and additional weapons (*id.* ¶ 27); (3) that law enforcement observed numerous firearms and ammunition in defendant's storage locker while executing the sneak and peek warrant discussed above (*id.* ¶ 33); (4) that although a holster for a .22 caliber revolver was found in the storage locker, a .22 caliber revolver was not (*id.*); and (5) that law enforcement had observed defendant in his 1994 Pontiac Sunbird convertible several times since February 1, 2002 and saw defendant go into the trunk and glove compartment (*id.* ¶ 35). This information is more than enough even absent the complained of statement about the presence of the red Pontiac at the scene of the crime.

## 2. Particularity

Defendant also argues that because the Government seized evidence in addition to that authorized in the warrant, the Government violated the particularity requirement of

the Fourth Amendment. (Def.'s Mot. Suppress Automobile ¶ 12.) To remedy this violation, defendant argues that all evidence seized beyond the six authorized items contained in the warrant be suppressed. (*Id.*) This Court disagrees.

The warrant issued on February 6, 2002 authorized the seizure of the following six items: (1) a .22 caliber revolver; (2) ammunition for a .22 caliber revolver; (3) holsters or containers for holding any firearms or ammunition; (4) items containing the name, address, and phone number of Joyce Brannon, 5942 N. Magnolia, Chicago IL; (5) items evidencing ownership of the subject vehicle; and (6) forensic evidence connecting Ronald Mikos to Brannon's murder scene, including blood, firearm residue, fibers, hair, and clothing containing any of the above forensic types of evidence. (Def.'s Mot. Suppress Automobile Ex. 1.) Mikos makes the assertion that because the Government seized items beyond those specifically listed in the warrant, the additional evidence seized should be suppressed.

The Fourth Amendment states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. As noted by defendant, "[t]he requirement that search warrants particularly describe the things to be seized is a bedrock of Fourth Amendment jurisprudence. . . ." *Supreme Video, Inc. v. Schauz*, 15 F.3d 1435, 1439 (7th Cir. 1994). However, as noted by the Government, law enforcement is also authorized to seize evidence discovered in plain view, so long as that evidence is found in a place where law enforcement has authority to inspect. *United States v. Van Dreel*, 155 F.3d 902, 905 (7th Cir. 1998).

As pointed out by the Government, defendant does not explain exactly what

30

evidence he wants suppressed. However, on February 6, 2002, sixteen items were seized from the car; on February 8, 2002 a laptop and briefcase were seized, but a second search warrant was issued to search those items; on February 15, 2002, floor samples and fabric from the front passenger seat were taken and on February 25, 2002, an additional fourteen items were seized. Neither the February 8 seizure of the laptop and briefcase nor the February 15 seizure of floor samples and fabric were in violation of the particularity requirement. The warrant authorized the seizure of both items containing the name, address, and phone number of Joyce Brannon. Such information reasonably could be found in the laptop or briefcase, and, as mentioned, above separate warrants (which are not challenged by defendant) were obtained to search these items. The warrant also authorized a search for and the seizure of forensic evidence, which reasonably could be found in the floor and fabric samples taken.

The Government asserts that any additional evidence law enforcement seized was done pursuant to the plain view doctrine. The plain view doctrine allows either the warrantless seizure of evidence or the seizure of evidence not particularly described in the search warrant if the following three conditions are met: (1) the officer is lawfully in a position to see plainly the object seized, (2) the officer has probable cause to believe the object is evidence of a crime, and (3) the officer has a lawful right of access to the object. *United States v. Connors*, No. 01 CR 326, 2002 WL 1359427, at *13 (N.D. Ill. June 19, 2002) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)).

Here, the Government clearly establishes the first and third elements. The warrant authorizing the search of the car gave the law enforcement agents who seized the additional evidence a lawful right of access to the evidence as well ensuring law

31

enforcement was in a position to see plainly the object seized.

Defendant does not specifically state which evidence he believes was seized in violation of the warrant and makes only a broad assertion that "the government seized many more items, most wholly unrelated to the six things listed in the warrant" this Court is unsure which items defendant seeks to suppress. However, this Court finds that the additional evidence seized, including unsigned affidavits regarding medical services performed by defendant on various patients, documents beginning with the statement "if you are contacted by anyone asking questions about Dr. Mikos," prescription drug containers prescribed to individuals other than defendant, and numerous documents beginning with "you are not obligated to talk to these people," was seized with the requisite probable cause, given the nature of the Government's investigation of Mikos' Medicare activities as well as activities constituting interference with patients who were potential witnesses against him in that investigation. The articles seized could reasonably be considered probative of both Medicare fraud and of an intent to interfere with or discourage potential witnesses from testifying against him. Thus, this Court finds that the additional evidence seized by law enforcement attached as exhibits two and five were seized either pursuant to the warrant, or pursuant to the plain view doctrine.

## CONCLUSION

For the reasons stated above, the Court denies defendant's Motions to Suppress (1) Items Seized from the Storage Locker [doc. no. 64-1], (2) Items Seized from Automobile [doc. no. 65-1], (3) Evidence of Oral Communications Intercepted Pursuant to 18 U.S.C. § 2510, *et seq.* (Title III) [doc. no. 66-1].

**SO ORDERED**           **ENTER:** 10/27/03

**HON. RONALD A. GUZMAN**
**United States Judge**

G:\00-LISA\02cr137suprs-rng.wpd

33