

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> RONALD MIKOS et al., ) <br> ) <br> Defendant. ) | 02 CR 137 <br><br> Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Defendant is accused of the murder of Joyce Brannon. On January 7, 2002, Ms. Brannon was shot five times in the back of the head with a .22 caliber gun. Although the murder weapon has not been recovered, the Government moves to admit certain evidence regarding Defendant's possession of firearms under Federal Rule of Evidence ("Rule") 404(b). For the reasons provided in this Memorandum Opinion and Order, the motion is granted in part and denied in part.

I.  **Gun Ownership in General**

Because the crime of which Defendant is accused was committed with a firearm, his

1

ownership of firearms can be relevant as it may tend to show opportunity - access to and familiarity with the use of firearms in general.

> However, evidence of prior possession of a weapon can be used to prove opportunity and identification even where it cannot be directly identified as the weapon used in the crime. *See Government of Virgin Islands v. Joseph,* 685 F.2d 857, 860-61 (3d Cir.1982); *United States v. Miroff,* 606 F.2d 777, 781 (7th Cir.), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1315, 63 L.Ed.2d 761 (1979).

*U.S. v. Covelli* 738 F.2d 847, *855 -856 (7th Cir.1984)

The fact that the firearms recovered are not the precise type of weapon used in the commission of the murder is not controlling. A person who routinely uses and keeps firearms about him is arguably better prepared to commit a crime with a firearm than one who is unfamiliar with them. Such a person is also familiar with where to purchase firearms and ammunition, how to transport a gun, how to load and shoot a gun, the noise that can be expected from discharging weapons of different calibers, and the likely effect of using the various calibers of ammunition. These are all considerations in the planning and execution of a murder by gunfire. Common sense tells us that should a person decide to commit a crime of violence, he is more likely to use an instrumentality with which he is familiar. The evidence of possession of and familiarity with other firearms, although not as probative as evidence of possession of the same caliber and type of weapon as the murder weapon, can, given the proper circumstances, nevertheless be relevant and admissible. In order to determine and weigh relevance, probative value, and possible prejudice to Defendant, we must look to the circumstances under which each cache of weapons was recovered. The proposed evidence can be divided into three groups.

## II. First Group of Weapons - 9311 Lincolnwood Drive

From approximately 1995 to 2001, Defendant rented a house at 9311 Lincolnwood Drive, Chicago Illinois. In July 2001, he was evicted. On February 19, 2002, federal agents searched that house and found the following items in the crawl space in the garage ceiling: 1) a Winchester Model 370A 30-06 caliber rifle, 2) a variable power Bushnell Sportsview scope, 3) a box of Remington 30-06 caliber bullets, and 4) a long gun guard plastic gun case. The owner of the property stated that the weapons are not his and that he does not know to whom they belong.

The defense asserts that the government's only purpose for presenting evidence of these hidden gun caches is to convince the jury that Defendant has a propensity to hide weapons and thus, they should conclude that Defendant has hidden the missing murder weapon as well. This, the defense argues, is precisely the type of use of other acts evidence that is prohibited by Rule 404(b), to wit: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person in order to show action in conformity therewith." The Seventh Circuit has held that evidence is admissible under Rules 404(b) and 403 if: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *United States vs. Smith*, 103 F.3d 600, 602 (7th Cir. 1996); *United States vs. Moore*, 115 F.3d 1348 (7th Cir. 1997) The Court, therefore, must consider these four factors.

3

The first prong of this test is easily met. All this first prong requires is a determination that the evidence is being offered to show *anything* other than Defendant's propensity to commit the crime charged. *United States vs. Thomas* 321 F.3d 627, 634 (7th Cir. 2003). Even if, the only purpose for admitting the evidence is, as Defendant argues, to show Defendant's propensity to hide guns, hiding guns is not a crime and certainly, it is not the crime with which Defendant is charged. Therefore, the evidence is directed towards establishing a matter in issue other than the defendant's propensity to commit the crime charged. The rule mentions opportunity, preparation, plan, and knowledge among other permissible purposes for introducing evidence of prior acts. Furthermore, as pointed out above, evidence of Defendant's ownership and familiarity with guns, as well as his experience in hiding guns in the past, clearly tends to prove knowledge relevant to the commission of the crime in addition to opportunity and possibly planning and preparation as well. Given the circumstances of this case, the Court does not see how the government can show ownership of these guns without also introducing in detail the circumstances under which they were found – hidden in the crawl space in the garage ceiling. This evidence is intertwined with the facts of the case. Therefore, evidence of Defendant's prior act of hiding weapons is unavoidable.

The second prong of the admissibility test under Rule 404(b), i.e., the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue, is also met. The prosecution's theory of the case is that the defendant used a gun to kill the victim and then hid the gun to keep it from any investigating authority. Therefore, his experience with guns and his experience and practice in hiding guns are all clearly relevant. The question of "close enough in time to be relevant to the matter in issue" is a closer call. These weapons were

recovered from a site which Defendant had not controlled for approximately seven months. In *United States vs. Covelli*, Id. at 855-56, n. 14, the court found no error in admitting evidence of prior instances of possession of a gun which occurred seven months and three years prior to the commission of the alleged shooting. The time frame in the case at bar falls easily within these parameters.

Prongs three and four, however, pose a problem for the prosecution. These prongs require that the evidence be sufficient to support a finding that the defendant committed the similar act; and that the probative value of the evidence not be substantially outweighed by the danger of unfair prejudice. These weapons were recovered from a site which Defendant had not controlled for approximately seven months. The only evidence linking Defendant to the possession of these weapons is his prior occupancy of the premises and the present owner's denial that the weapons are his. The probative value of a cache of weapons over which Defendant apparently exerted no control and as to which he cannot be directly linked is slight. The possible prejudice to Defendant is that the jury will see him as obsessed with guns and draw a negative inference about his character and his propensity to engage in violence. The weapons are removed in time and place from the alleged offense, and the evidence linking Defendant to the weapons is circumstantial and slight. Further, the government does not need this particular evidence to establish Defendant's familiarity with guns and their use. This evidence would be cumulative. When weighed against the potential prejudice to Defendant the slight probative value of this evidence is substantially outweighed by the danger of unfair prejudice and the evidence is, therefore, excluded under Rule 403.

### III. Second Group of Weapons - 5958 West Lawrence, Chicago IL

On February 19, 2002, federal agents searched 5958 West Lawrence, Chicago, Illinois. From a least June 1992 to approximately January 13, 2002, Defendant rented office suite 104 at that location. A search of suite 104 resulted in the following items being recovered from above the ceiling tiles: 1) a Ruger Super Redhawk .44 Magnum revolver, 2) a Reiger Blackhawk .44 Magnum revolver, 3) 166 capsules of pink tablets in a bottle marked "Propoxyphene HCI", 4) 550 rounds of .22 caliber ammunition, and 5) various documents including a business card for "Ronald Mikos" and blank checks printed with "Ronald Mikos." The owner of the premises told the agents that none of these items were his and that he did not know to whom they belonged.

The considerations as to prongs one and two of the test are the substantially the same as discussed above for the first group of weapons. The ownership of such weapons provides evidence of Defendant's familiarity with handguns and their use. In addition, the 550 rounds of .22 caliber ammunition show that Defendant had access to the type of bullets used to kill the victim. The fair inference, it can be argued, is that if he had such large amounts of .22 caliber bullets, he also owned a weapon with which to fire them and that he has had much practice doing so. Thus, this evidence tends to prove Defendant possessed the means to commit the crime, i.e., opportunity and knowledge.

In this seizure the requirements of prongs 3 and 4, are also met. Proof of Defendant's ownership is strong. The location and time of the seizure indicated ownership as do the documents found with the weapons. The weapons were accessible to Defendant during the relevant time period. The probative value of the evidence is, therefore, not substantially outweighed by the danger of unfair prejudice. The recovered weapons and documents are

admissible under Rules 404(b) and 403.

In this seizure, as in the first, the Court cannot conceive of a way for the government to introduce the evidence without also introducing the details of the seizure, such as the fact that the weapons were hidden. These details, where the guns were found and the incidents of ownership (the business cards and documents containing Defendant's name) found with them, provide evidence of Defendant's ownership and control. Evidence of Defendant's ownership is, of course, crucial to relevance. Indeed, the lack of such evidence regarding the first group of weapons seized is one of the main reasons that evidence was found inadmissible. The Court has not been given any basis for determining that the pink tablets recovered have any relevance or probative value to this case and, therefore, those items will not be admitted.

### IV. Third Group Of Weapons - 7827 Keystone, Skokie Illinois

On January 6, 2002, Skokie police officer Daniel O'Brien, responding to a domestic disturbance call, confiscated the following weapons and ammunition which Defendant admitted he was storing in the basement of that location: 1) Herbert and Schmidt .22 caliber revolver (stamped with "Hawes"), 2) Charger Arms Bulldogs .44 special caliber revolver, 3) .22 caliber Calico M-100 .22 Semi-automatic, 4) Smith and Wesson 9mm Semi-automatic, 5) Remington Model 514 .22 caliber rifle with scope, 6) Remington Model 5601 .22 caliber rifle with scope, 7) Universal .30 caliber rifle with scope, 8) J.C. Higgins Model 20 twelve-gauge shotgun with scope, and 9) hundreds of rounds of ammunition of various calibers. On January 24, 2002, all of these items were returned to Defendant when he produced a valid Firearm Owner's Identification Card. Three days later, Joyce Brannon was shot to death. On February 5, 2002, nine days after

the murder, law enforcement officers retrieved from a storage facility rented by Defendant all of these items which had been returned to him except the .22 caliber Herbert and Schmidt revolver. Also retrieved from this storage facility was a book entitled *How to Hide Anything*. The government will present ballistic analysis evidence to show that a .22 caliber Herbert and Schmidt revolver is one possible weapon used to murder Joyce Brannon.

The weapons are not being offered to prove the defendant's propensity to commit the crime charged, and may be admitted for the alternative reasons discussed above as to both the first and second group of weapons seized. In addition, one of the weapons recovered on this occasion is a weapon that could have been used to commit the murder. Further, that weapon is now missing, the only one to be missing from this particular group of weapons. Thus, the connection to Defendant and the probative value of this evidence cannot be questioned. That the guns were initially confiscated by the police and then later returned is evidence that would tend to indicate prior criminal conduct, *i.e.*, possession of a firearm without a Firearm Owners Identification Card. Such proof could, of course, be prejudicial to Defendant. However, once again the details of how the items were seized are essential to prove that the .22 caliber handgun belonged to Defendant and to give credibility to the investigative process. The probative value of the evidence is enhanced by a believable showing of how the evidence was acquired. The sequence of events is also necessary to show that Defendant was in possession of or had access to the .22 caliber gun (which is of the type that could have been used to commit the murder and which is now missing) during the time of the murder. This is crucial evidence that Defendant had the means to commit the crime. Therefore, these events constitute relevant probative evidence as to opportunity, knowledge and means, and they will be admitted unless the parties

8

can reach a stipulation as to Defendant's possession of the weapons during the relevant time period which would obviate the need to prove the confiscation and later return of the firearms. The evidence regarding the sequence of events involved in the seizure and return and subsequent renewed seizure of the weapons is intricately related to and inextricably intertwined with the facts of this case. The fact of the "domestic dispute" - the reason for the initial police involvement that resulted in the first seizure of the weapons - is not particularly relevant and it may not need to be brought out on direct examination if the officers' presence at the scene can be otherwise reasonably explained or subject to a stipulation. This issue remains open for further argument.

Finally, the recovery of the book, *How to Hide Anything*, is relevant. It is not admitted to show defendant's character and propensity to commit the crime charged. It tends to show that Defendant was planning to and had knowledge of how to successfully hide things. Because the murder weapon has never been found and the prosecution's theory is that Defendant used the missing .22 caliber Herbert and Schmidt revolver and then hid it, Defendant's possession of or access to the knowledge in this book becomes relevant and admissible to show knowledge, opportunity, plan or absence of mistake or accident as well as means. This evidence would help explain why the murder weapon was never recovered even though Defendant was arrested and his properties searched. The book is therefore admissible. There is nothing inherently prejudicial about possession of such a book and whatever slight prejudice there could possibly be to the defendant is substantially outweighed by the probative value.

The defense complains that to allow evidence of the government's failure to find the .22 caliber Herbert and Schmidt revolver when they once again retrieved all of the other weapons

and ammunition which had previously been seized from the defendant and then returned to him would be prejudicial to Defendant. Defendant's argument is that from this evidence jurors will be led to expect an explanation from the defendant as to what happened to this weapon. This, in turn, would amount to a violation of Defendant's right to remain silent. The defendant draws a comparison to the violation that would occur if the government argued to the jury that the defendant's failure to explain what happened to the gun is evidence of the fact that the gun is indeed the murder weapon. The Court disagrees. The government represents they will make no such argument and indeed, would not be allowed to do so. But the fact that the defendant possessed a gun suitable for committing the murder, that he kept that gun at one point in time just days before the murder with other guns, and that this gun alone is now missing, constitutes circumstantial evidence that the defendant has hidden the gun. As such, it may be weighed by the jury along with all other relevant evidence. Circumstantial evidence which tends to implicate a defendant is not the same as an impermissible reference to a defendant's failure to testify.

The court will consider giving the jury appropriate limiting instructions following the introduction of any of the contested evidence discussed above as well as a cautionary jury instruction at the end of the case if Defendant so requests.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Government's motion to admit certain evidence regarding Defendant's possession of firearms under Federal Rule of Evidence 404(b) [doc. no. 239-1]. The evidence recovered from 9311 Lincolnwood

10

Drive will not be admitted. All other evidence seized is ruled admissible.

**SO ORDERED**  ENTER: *March 21, 2005*

_____
**RONALD A. GUZMÁN**
**District Judge**