## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 02 CR 137 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| | ) | |
| | ) | |
| RONALD MIKOS et al., | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The government will present expert testimony from FBI tool marks a specialist, Paul A.
Tangren. Agent Tangren will testify that after making measurements of the markings on the
leather holster recovered from the defendant and comparing them to the dimensions of the type
of gun the defendant was known to have possessed, he concluded that those marks are consistent
with the kinds of marks that could have been made by the type of handgun the defendant was
known to possess. He will further testify that the marks on the holster are also consistent certain
other revolvers he has located, but that he does not know the total universe of firearms that could
have made the impressions.

Defendant moves to bar this testimony on the grounds that: 1) tool marks identification as

applied to markings on leather holsters is too unreliable to support testimony in Federal Court, and 2) that the method by which the FBI identified the model of firearm for comparison is also too unreliable to support testimony in Federal Court. Defendant argues that the government will not be able to establish that the firearm returned to the defendant by the Skokie Police Department has a barrel of 4 3/4 inches in length and that leather, unlike metal, does not retain markings made on it and, therefore, is not suitable for tool mark identification. The court disagrees.

As the government points out, the scientific testimony in this case is fairly simple. Hard objects, such as a metal gun, that are repeatedly scraped or pushed against leather or left in contact with leather under pressure for a sufficient amount of time will leave marks and indentations in the leather. By measurement and comparison one can determine whether or not an individual object could have made the marks and indentations seen on such a leather object. The fact, as the defendant's expert points out, that tool mark analysis can not link one individual gun to one individual holster because holsters do not retain individual microscopic features from one individual gun, is not a bar to the admission of the proposed testimony. The government's expert does not intend to link the tool marks on the leather holster with a particular gun, merely with certain types of guns - among which is the gun allegedly known to be in the defendant's possession. Nor is this the type of expert testimony likely to mislead or overwhelm the jury. The basic principle here is fairly simple, one need only look at an old pair of leather shoes to see how the leather can be scraped, marked, and shaped by harder objects. Every juror has had experience with this basic principle and will be able to adequately weigh the value of the government's evidence in this regard. The probative value of this evidence substantial as it

2

tends to establish the defendant had the means to commit the crime. The probative value substantially outweighs any possible danger of unfair prejudice.

Certainly, if the government fails to establish the necessary measurements and features of the gun which the defendant allegedly possessed, then the expert will have nothing of relevance with which to compare the tool marks found on the leather holster. The evidence is only relevant if it can be linked to a weapon which can be linked to the defendant. Whether or not such evidence is forthcoming the court cannot say at this time. Like all rulings in limine, the court's ruling today is tentative and anticipates that an appropriate foundation will be established to make the testimony relevant and otherwise admissible.

The motion is denied.

**SO ORDERED**                    **ENTER:**   MAR 2 8 2005

**RONALD A. GUZMAN**

**District Judge**