IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 02 CR 137 |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| RONALD MIKOS et al., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The government intends to introduce evidence of victim impact at the sentencing phase of the trial, if the defendant should be found guilty, through the testimony and exhibits of the victim's 92 year old mother, Selma Brannon. Defendant objects to much of the proposed evidence. 18 U.S.C. § 3593(a) provides that factors which the government may prove at the special death sentence hearing to justify the death penalty may include evidence concerning the effect of the offense on the victim and the victim's family. Such evidence may include oral testimony or a victim impact statement which identifies the victim and the extent and scope of the injury and loss by victim and victim's family. In this regard the indictment contains as an aggravating factor the following language:

1

> As demonstrated by victim's personal characteristics and the
> impact of her death upon her family, friends, and co-workers,
> defendant caused injury, harm and loss to the victim's family,
> friends and co-workers.

In *Payne vs. Tennessee*, 501 U.S. 808 (1991), the Supreme Court held that the Eighth Amendment does not bar the admission of victim impact testimony in the sentencing phase of a capital trial, thus overruling *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987):

> "[V]ictim impact evidence ... is designed to show ... each victim's
> uniqueness as an individual human being."

*Payne*, 501 U.S. at 823, 111 S.Ct. 2597.

However, in his concurring opinion Justice Souter also recognized the possibility of unfair prejudice which could result from the introduction of such evidence and found that the traditional guard against inflammatory risk was the trial judge's authority and responsibility to control the proceedings consistently with due process, on which grounds the defendant may object or appeal. 18 U.S.C. § 3593(c) provides that such evidence may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury. As Defendant points out, unlike Fed.R.Evid. 403, this section does not require that the danger of prejudice "substantially" outweigh the probative value in order for such evidence to be excluded.

Defendant objects to Selma Brannon's deposition testimony:

Q: After the funeral and you were able to contact the people who sent sympathy cards, did you put together anything else about Joyce and her death?

A: Yes, I made another book that I had all the clippings from the newspaper. And people would send me clippings from Iowa and Chicago, and that way we kept up in date – up to date, different –

Q: You've been following the case for the last few years?

A: Yes.

Transcript P.17, Lines 11-20.

This testimony, defendant argues, informs the jury that Selma Brannon has been adamantly following this case for years and has a personal interest in the outcome of the case. This, defendant argues, is irrelevant testimony in that it does not describe either the victim or the victim's family's loss. Further, it violates the still valid case of *Booth v Maryland*, 482 U.S. 496 (1987). The court disagrees. That portion of *Booth* which has not been overruled holds that admission of a victim's family members' characterization of and opinions about (1) the crime, (2) the defendant, and (3) the appropriate sentence violates the Eighth Amendment. This testimony does not violate that holding. There is no opinion expressed about the crime, the defendant or the appropriate sentence. Does it inform the jury that the witness has been following the case, yes. But the compilation of clippings from the newspaper is no more than one of the ways in which Selma Brannon has coped with the death of her daughter. It demonstrates the degree of her loss. Testimony describing efforts to cope with loss by the family and relatives of a deceased victim has been held admissible. *U.S. v. McVeigh* 153 F.3d 1166, 1221 (10th Cir.1998) (citing *Payne*, 501 U.S. at 827). This objection is overruled.

The following testimony from Page 19, Lines 2-5 of Selma Brannon's deposition,

however, does violate the proscriptions of *Booth*. "And .. and I feel .. well its something I guess you can't explain but I'm still very proud that Joyce spoke the truth and made the right decision, and that she would not lie." As the government appears to agree, this testimony does give or at least imply an opinion about the crime. The objection to this portion of the witness' response, is sustained.

Defendant objects to exhibits labeled Joyce Brannon Photos A-E. Exhibit A is a 1961 confirmation picture of Joyce Brannon. Exhibit B is a photograph of Joyce Brannon, her mother, and cousin taken at the time of Joyce Brannon's father's funeral. Exhibit C is a high school graduation photograph. Exhibit D is a photograph of her either while attending or when she graduated from nursing school. Exhibit E is a photograph of Joyce Brannon in May of 1992. Defendant argues that only Exhibit E, which most accurately reflects her at the time of her death, is relevant. The other photographs are not relevant and are "unfairly prejudicial." The court disagrees. As held in *McVeigh*:

> Numerous witnesses, ... testified about the professional and
> personal histories of victims who perished in the bombing,
> including reflections on the admirable qualities of the deceased....
> [T]he unique qualities of a murdered individual and his or her life
> accomplishments constitute the core impact evidence describing a
> victim's "uniqueness as an individual human being" allowed by
> *Payne*. *Payne*, 501 U.S. at 823, 111 S.Ct. 2597; see also *Wiley v.
> Puckett*, 969 F.2d 86, 105 (5th Cir.1992) (victim's wife properly
> testified about places she and her husband had lived and her
> husband's character).

153 F.3d at 1219 - 20. These exhibits are no more than pictorial representations of some of the milestones in the victims life, i.e., the things she accomplished along the way, the things that tend

4

to identify her as a unique individual - confirmation, high school graduation, college graduation, and coming together for the death of a parent. The pictures themselves are unremarkable. There is no inflammatory content nor is the amount of evidence overwhelming. The objection is overruled.

Defendant next objects to the Selma Brannon Card Exhibit. This is the last written communication sent by Selma Brannon to her daughter before the daughter's death. Defendant argues that this card/letter is not descriptive of the victim or victim's family's loss. The court disagrees. The victim and her mother lived far apart. Under such circumstances jurors may question the closeness of their relationship which in turn affects the degree of loss felt by the mother. Under such circumstances, evidence of the extent and nature of their communications will go a long way towards defining the relationship between Joyce Brannon and her surviving mother. This exhibit does just that. It is clear from reading it that they kept up to date about the current events in their everyday lives and shared experiences. Similar, albeit much more emotional, testimony as to last contacts between victims and family members has been held properly admitted under *Payne* as relevant to understanding the uniqueness of the life lost and the impact of the death on each victim's family. *McVeigh* at 1219. There is nothing in the content of the letter/card to arouse unusual sympathy or passion. Selma Brannon merely describes small everyday occurrences important to her and which apparently she and her daughter were accustomed to sharing. She also inquires as to Joyce Brannon's health problems. The objection is overruled.

Next Defendant objects to the exhibits labeled Joyce Brannon Photo Album, Joyce Brannon Sympathy Cards and Memorial Scrapbook. Defendant argues that these exhibits are in

5

effect memorials eulogizing the victim. They contain many pictures, articles, letters and memorabilia regarding Joyce Brannon which Defendant claims are highly inflammatory and emotional and would tend to arouse the passions of the jury. Defendant cites *United States v. Gary Lee Sampson*, 2004 U.S.Dist. Lexis 17111 (August 26, 2004) as a case in which the government was precluded from introducing a memorial videotape that included 200 still photographs of the victim from his birth until his death because the probative value was outweighed by the danger of unfair prejudice; also in *McVeigh*, the trial court prohibited use of wedding photographs and home videos.

The Joyce Brannon Photo Album is a compilation of photographs from Joyce Brannon as a toddler to her high school graduation commencement documents, professional licenses, Newsletters, Birth Certificates, and some other memorabilia. As pointed out above, to the extent that these photographs are useful in depicting the life history of the victim, they are admissible under the guidelines of *Payne*, *Wiley* and *McVeigh*. However, a good number of the photographs in this album are of friends and family members, some with and some without Joyce Brannon, in settings that have little probative value in proving the victim's life history or the loss to the family. Many of the photographs are duplicates, some are essentially duplicates - numerous photographs of the same event and as such are not particularly probative. Many of the photographs have descriptions or other writings on them which may or may not be objectionable for other reasons. To admit the entire collection into evidence and submit the same to the jury for its consideration would be an invitation to spend an inappropriate amount of time on this aspect of the sentencing hearing. The court can certainly envision an appropriate use of many of the photographs. For example, in her deposition testimony Selma Brannon mentions many of the

facts and events which the photographs depict. These photographs may certainly be admitted and published to the jury as they are an aid to the understanding of that testimony. The same is true for any memorabilia, certificates, diplomas, licenses etc. which reflect any of the events or facts in Selma Brannon's testimony. There also may be other such items in the album which are self explanatory even though not specifically the subject of Selma Brannon's testimony and reflective of some aspect of Joyce Brannon's life. But, to allow the entire album to be published, containing as it does many photographs the significance of which would be unknown to the jury without an explanation and many of which are not of particular importance in the development of the victim's life history, would be to unduly emphasize this portion of the case. The jury could spend hours viewing all of the photographs in the album. Certainly, the existence of the album itself, the fact that the victim's mother compiled the album, and the circumstances and reasons for doing so are relevant and demonstrate the relationship of Selma and Joyce Brannon prior to the victim's death as well as how the loss has impacted the mother. Such evidence is clearly admissible and can be brought out by testimony. The album itself may be marked, identified and admitted in evidence. But the government must choose a smaller, representative number of photographs and items to be actually published to the jury. The objection to this exhibit is sustained in part.

The Memorial Scrapbook exhibit consists mostly of announcements of Joyce Brannon's death in various newspapers and newsletters, announcements of money donated to various funds in memory of Joyce Brannon, letters to the various congregations and other groups expressing thanks for their support, letters describing Joyce Brannon's good works. It is difficult to deal with all of these items clumped together. Some of the material is of little relevance. For example,

7

some items are likely to be excludable because of their minimal probative value as compared to their potential to elicit emotion and unfair prejudice. Some, on the other hand, may be valuable in depicting issues such as the victim's life history, her role in the community and the effect of her absence in that community. Some of the exhibits we simply cannot evaluate without a specific explanation as to why they are being offered. Because of this the objection to admission of the Memorial Scrapbook as a whole is sustained in part. The scrapbook may be identified and admitted in evidence but it may not be published to the jury as a whole. However, the government is free to offer specific exhibits for which a proper foundation and purpose can be established or has been established during the depositions. In addition, the testimony about the compilation of the Memorial Scrapbook and the reasons for doing so is admissible as evidence of Selma Brannon's attempts to cope with her daughter's death.

We last consider the Joyce Brannon Sympathy Cards Exhibit. While many of these sympathy cards contain information about Joyce Brannon's role in her community and are, therefore, clearly admissible, many also contain emotional expressions of sympathy to Selma Brannon which are of the sort likely to arouse sympathy and emotion to an unnecessary degree. Some are merely expressions of sympathy from third parties to Selma Brannon with no particular reference to Joyce Brannon or any particular link or connection to her or her family. They serve only to highlight the grief Selma Brannon was experiencing. For this reason the objection to this exhibit is sustained. Although the cards cannot be admitted as a group, that does not mean that certain individual cards may not be appropriate. The fact of the receipt of a substantial number of such cards also is indicative and reflective of the degree of loss to the community and, therefore, is admissible. It is the actual content and language of some of these expressions of

sympathy that must be considered on an individual basis in order to weigh probative value against possibility of unfair prejudice. Such an individualized analysis has not been offered by the proponent of the exhibits and, therefore, we make no ruling in that regard.

**SO ORDERED**                    ENTER: April 4, 2005

*[signature]*
RONALD A. GUZMÁN
**District Judge**